UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Malcolm Labon,

        Plaintiff,

v.

Officer John Laluzerne (in his individual
and official capacity) and Officer Patrick
McCarver (in his individual and official
capacity),

        Defendants.

Civil No. 09-1408 (JNE/JSM)
ORDER

Malcolm Labon brings claims of excessive force and First Amendment retaliation against Minneapolis Police Officers John Laluzerne and Patrick McCarver.  The case is before the Court on the officers' motion for summary judgment solely on the First Amendment retaliation claim.  For the reasons discussed below, the Court grants the motion.

## I.    BACKGROUND

Labon's First Amendment retaliation claim arises from an event on August 6, 2006, when he called 911 to report that he was observing an incident of police brutality.  Labon alleges that he observed two police officers stop an individual and beat him outside of 1420 Portland Avenue, Minneapolis, Minnesota.[1]  In his Complaint in this case, Labon identified the officers as McCarver and "another officer."  At his deposition, he did not identify either officer by name but testified that "the guy with the black hair" did most of the beating.  (Labon Dep. 82)  The police report from the incident shows that McCarver was not working on August 6, 2006, and that the officers on the scene were Officer Laluzerne and Officer Gregory Gentz.  In a declaration submitted with his response to the instant motion, Labon again stated that he saw McCarver that

---

[1] In their briefs, both parties wrongfully identify this incident as having taken place on August 8, 2006.  The police report from the incident states that the incident occurred on August 6, 2006.  (Walther Aff. Ex. D, at 1)

1

night.  He also stated that he knows that the officer he saw that night was one of the officers now subject to this suit.[2]

It is undisputed that police were called to the area by reports that people were dealing drugs.  When the police first arrived, a group of approximately ten people was congregated outside of 1420 Portland Avenue.  Minneapolis police, including the defendants, were aware that the area had been experiencing drug-related problems.  The group of people outside of 1420 Portland included an individual who was ultimately discovered to have "rocks" of suspected crack cocaine in his mouth.  This is the same individual who, according to Labon, was being beaten by the police.  Officer Laluzerne testified that a crowd began to form on the sidewalk while he and Officer Gentz were attempting to extract the drugs from the mouth of this individual.  Laluzerne noticed a female and a male, whom he later identified as Labon, yelling "they smashed this guy in the mouth, they're beating him up, you know, police brutality, all kinds of stuff like that." (Laluzerne Dep. 57-58)  Gentz's supplement to the police report states that the crowd included at least twenty people and that the male and the female were inciting the crowd.  (Walther Aff. Ex. D, at 14)  Eventually, the pair got so close to Laluzerne and Gentz that the officers began to fear for their safety. (Walther Aff. Ex. D, at 14)  Laluzerne arrested the female for interfering during the arrest process; Labon ran away and the police did not pursue him.

The police report from the incident reveals that, along with 911 calls by Labon, there was a 911 call made by another individual about a person who, Labon's counsel agreed at oral argument, was Labon.  The caller described a black male in his twenties, wearing a white tee-shirt and jeans, and yelling about police brutality.  According to the 911 transcript, the caller said

---

[2]   Although the basis for Labon's familiarity with the officers is not explained, it seems from the record that it may be related to his arrests both before and after the date in question.

that the man was trespassed from the area and was a drug dealer who causes problems in the area.  (Walther Aff. Ex. D, at 10)  After the individual with crack cocaine in his mouth was arrested, he complained of pain in his right elbow and shoulder.  An ambulance was called to the scene and medics determined that he did not need medical attention.  (Walther Aff. Ex. D, at 14)  There is no evidence that Gentz and Laluzerne were ever investigated, sued, or otherwise disciplined for their involvement in the alleged beating.

Labon complains of several incidents that allegedly occurred as a consequence of his having called 911.  First, he claims that unidentified officers, not Laluzerne or McCarver, told him that they were going to watch out for him because he was a "cop killer" or had "been talking about killing cops."  (Labon Dep. 58; Compl. ¶ 9)  In another incident, unidentified detectives stopped Labon and several friends, asked for their identification, and told Labon that they were going to keep a close eye on him.  Labon also testified that, on another occasion, as he was leaving his cousin's apartment building, he saw Officers Laluzerne and McCarver outside.  He made eye contact with the officers and immediately ran back inside.  From inside, he asked the officers to leave him alone.  McCarver warned that he would "stay here until you come out of the building."  The officers stayed for about an hour and he stayed at his cousin's apartment "for the rest of the day."

On September 8, 2006, Labon was arrested by Officers Laluzerne and McCarver.  He was pulled over while driving home from a club at 2:30 a.m.  Labon did not stop when the officers first signaled for him to pull over and instead drove another block.  After pulling over, Labon got out of the car with his hands over his head, holding his keys.  He was ordered to "get down on the ground."  (McCarver Dep. 33)  According to McCarver, Labon should have known that meant to lie on the ground.  (McCarver Dep. 51)  Labon squatted with one knee on the

ground, near the open car door. As he was doing so, McCarver kicked him in the ribs.[3] McCarver then pushed Labon's face into the pavement, allegedly chipping his tooth, and placed him in handcuffs. Labon was arrested for driving after suspension of his license, careless driving (later amended to reckless driving), driving while under the influence of alcohol, and having marijuana in his vehicle. The case was resolved when Labon pleaded guilty to careless driving.

Labon testified that the officers who arrested him on the night of September 8, 2006—undisputedly Officers McCarver and Laluzerne—were the same officers he called about on August 6, 2006. He also testified that the officer with dark hair who was being violent when he called the police on August 6, 2006, was "the same one who kicked me." (Labon Dep. 47-48) Officer Gentz, not Officer McCarver, was working with Officer Laluzerne on August 6.

## II. DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

---

[3] In a separate lawsuit, Labon described the kick as a kick to the head. *See* Complaint ¶ 5b, *Zanders v. Swanson*, No. 07-cv-3171 RHK/JSM (D. Minn. May 3, 2007), ECF. No. 1. In his deposition, he stated that he could not remember on which side of his body he was kicked. (Labon Dep. 74-75)

Officers Laluzerne and McCarver argue that they are protected from Labon's First Amendment retaliation claim by the doctrine of qualified immunity. "[T]he doctrine of qualified immunity protects government officials such as police officers from individual liability under § 1983, unless their conduct violated clearly established . . . constitutional rights of which a reasonable person would have known." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 473-74 (8th Cir. 2010) (internal quotation marks omitted). The officers do not dispute that Labon's August 6, 2006, 911 calls were protected First Amendment activities. "A citizen's right to exercise First Amendment freedoms 'without facing retaliation from government officials is clearly established.'" *Id.* at 474 (quoting *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007)). The question before the Court, then, is whether a reasonable jury could find that Officers Laluzerne and McCarver, by their alleged conduct toward Labon, violated this right.

"To prevail in an action for First Amendment retaliation, 'plaintiff must show a causal connection between a defendant's retaliatory animus and [plaintiff's] subsequent injury.'" *Id.* (alteration in original) (quoting *Osborne v. Grussing*, 477 F.3d 1002, 1005 (8th Cir. 2007)). While the causal connection is generally a jury question, "it can provide a basis for summary judgment when the question is so free from doubt as to justify taking it from the jury." *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002) (citation omitted). "Retaliation need not have been the sole motive, but it must have been a substantial factor in" the decision to take the adverse action. *Kilpatrick*, 499 F.3d at 767 (8th Cir. 2007) (internal quotation marks omitted). The plaintiff must also show that a retaliatory motive was the "but-for cause of the harm; that is, that the plaintiff was 'singled out' for adverse treatment because of his exercise of constitutional rights." *Id.*

The Court disregards Labon's arguments regarding the "cop killer" incident and the alleged stop and identification by detectives. Labon has not shown any connection between these events and the defendants or his exercise of First Amendment rights. His speculation about police officers talking with one another has no record support. The Court also rejects Labon's argument that the close timing of all of the incidents—within one month of the 911 calls—and the weight of the incidents taken together raise at least a question of fact about causation. On summary judgment, the "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997).

With respect to the incident outside of his cousin's apartment, the Court notes that Labon does not claim any Fourth Amendment violation. Indeed, when officers have independent reason to be concerned about an individual, the individual makes eye contact with the officers, and then the individual flees, the officers may have reasonable suspicion to support an investigative stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968); *see, e.g.*, *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (finding the suspect's flight upon seeing police officers while in a high-crime area justified a *Terry* stop); *United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010). Here, the evidence viewed most favorably to Labon reveals an interaction falling far short of a *Terry* stop. Labon points to no case finding police liability for First Amendment retaliation in the absence of a Fourth Amendment violation. And perhaps more importantly, nothing in the record would allow a reasonable jury to find a connection between the incident and his 911 calls.

Similarly, other than count one of his Complaint, Labon makes no assertion of a Fourth Amendment violation in connection with his September 8, 2006 arrest. Labon does not dispute

6

that the officers had probable cause both to stop and to arrest him; he challenges only the force used against him. Excessive force is tested against an objective standard; in evaluating claims of excessive force, "[t]he key question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Nance v. Sammis*, 586 F.3d 604, 610 (8th Cir. 2009) (internal quotation marks omitted). Labon has not produced any facts tending to show that the 911 calls were either a substantial factor or the but-for cause of McCarver's decision to kick him during his arrest on September 8, 2006. *Cf. Kelly v. City of St. Paul*, Civ. No. 09-461 (JRT/JSM), 2010 WL 4272460, at *6, *9 (D. Minn. 2010) (granting summary judgment on First Amendment retaliation but finding fact issue on excessive force).

### III. CONCLUSION

Labon has not connected any of the allegedly retaliatory events to his 911 calls on August 6, 2006. The officers are entitled to qualified immunity. The Court grants summary judgment in favor of the officers on Labon's First Amendment retaliation claim.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' motion for summary judgment [Docket No. 9] is GRANTED.

2. Count II of Plaintiff's Complaint [Docket No. 1] is DISMISSED.

Dated: July 15, 2011

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

7